UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN GREENE, on behalf herself and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>   Defendants. | Civil Action No. 03-CV-12628 |
| JOHN G. ESPOSITO, JR., D.D.S., on behalf himself and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>   Defendants. | Civil Action No. 04-CV-10013 |
| JOSEPH L. KING, on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>   Defendants. | Civil Action No. 04-CV-10038 |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| Michael E. CRIDEN, on behalf himself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>      Defendants. | Civil Action No. 04-CV-10046 |
| ISRAEL SHURKIN and SHARON SHURKIN on behalf themselves and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>      Defendants. | Civil Action No. 04-CV-10055 |
| JAMES J. NIZZO and VIRGINIA C. NIZZO, as JOINT TENANTS and CARLO CILIBERTI, on behalf of themselves and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>      Defendants. | Civil Action No. 04-CV-10065 |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| BARRY BROOKS, on behalf himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>        Defendants. | Civil Action No. 04-CV-10077 |
| ANASTASIOS PERLEGIS, on behalf himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>       Defendants. | Civil Action No. 04-CV-10078 |
| MARTIN WEBER, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>       Defendants. | Civil Action No. 04-CV-10090 |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| BRUCE HAIMS, on behalf himself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>      Defendants. | Civil Action No. 04-10144 |
| MODEL PARTNERS LIMITED, on behalf themselves and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>      Defendants. | Civil Action No. 04-CV-10155 |
| JUNE E. PATENAUDE, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>      Defendants. | Civil Action No. 04-CV-10179 |

**[Additional Captions Follow on Next Page]**

| | |
|---|---|
| NANCY L. PINCKNEY and GERTRUDE PINCKNEY, on behalf themselves and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>       Defendants. | Civil Action No. 04-CV-10189 |
| W. KENNETH JOHNSON, on behalf himself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>       Defendants. | Civil Action No. 04-CV-10190 |
| GREGORY KRUSZKA, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH and RONALD F. RICHARDS,<br>       Defendants. | Civil Action No. 04-CV-10202 |

**MEMORANDUM OF LAW IN SUPPORT OF GEORGE ELIOPOULOS, DALE SELF AND MARK MENTZ'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS, AND FOR APPROVAL OF CHOICE OF LEAD COUNSEL**

## I. PRELIMINARY STATEMENT

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") George Eliopoulos, Dale Self and Mark Mentz, individual investors with losses of approximately $60,212 from purchasing common stock of Biopure Corporation ("Biopure"), respectfully submits this memorandum of law in support of their motion to: (i) consolidate all related actions; (ii) be appointed Lead Plaintiffs in the consolidated securities class action; and (iii) approve their selection and retention of Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") and Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") as Lead Counsel.

This is a securities class action, alleging violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, on behalf of all persons who purchased Biopure common stock during the period of March 5, 2003 through December 24, 2003 (the "Class Period"). ¶1.[1] The action charges Biopure, Thomas A. Moore, the Company's President and Chief Executive Officer until his resignation on February 24, 2004, Carl W. Rausch, the Company's co-founder and Chief Technical Officer, and Ronald F. Richards, the Company's Chief Financial Officer, with disseminating false and misleading statements, which led directly to an artificial inflation the value of the Company's stock. ¶1.

During the Class Period, the Proposed Lead Plaintiffs purchased 26,675 shares of Biopure common stock, and, as a result of the fraud alleged, suffered a loss of approximately $60,212. Specifically, George Eliopoulous, an individual investor,

---

[1] All paragraph references are to the complaint filed in <u>Michael E. Criden v. Biopure.</u>, No. 04-CV-10046-NG (D. Mass. Jan. 8 2004).

6

purchased 9,675 shares of Biopure common stock during the Class Period and suffered losses of approximately $31,008. Similarly, during the Class Period, Mr. Self and Mentz purchased 10,000 and 7,000 shares of Biopure common stock and suffered losses of approximately $15,498 and $13,707, respectively.

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(iii), affords a presumption that the person or group of persons with the largest financial interest in the relief sought by the Class, and who otherwise preliminarily satisfies the requirements of Fed. R. Civ. P. 23, is presumed to be the most adequate plaintiff and should therefore be appointed as lead plaintiff. Here, the Proposed Lead Plaintiffs are believed to be the shareholders with the largest financial interest in the relief sought by the Class and satisfies the applicable requirements of Fed. R. Civ. P. 23. For the reasons set forth below, the Proposed Lead Plaintiffs respectfully requests that this Court grant their motion for appointment as Lead Plaintiffs and approve their selection of Lead Counsel.

## II. INTRODUCTION

On December 22, 1995, Congress enacted Public Law 104-67, the PSLRA, which amended provisions of the Exchange Act. The PSLRA sets forth, among other things, procedures for providing notice to members of the proposed Class regarding the selection of a lead plaintiff or plaintiffs to prosecute the action on behalf of the Class and the retention of lead counsel.

Section 78u-4(a)(3)(A)(i) of the PSLRA provides that within 20 days after the date on which a securities class action is filed:

>  the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class . . .
>
>  (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
>  (II)  that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, Section 78u-4(a)(3)(B) of the PSLRA directs the court to consider any motions by putative class members to serve as lead plaintiff in response to any such notice by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate any actions "asserting substantially the same claim or claims." 15 U.S.C. §78u-4(a)(3)(B).

The PSLRA also directs the Court to presume that the "most adequate plaintiff" to serve as lead plaintiff is the person or group of persons that:

>  (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
>  (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001).

This presumption "may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class" or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-

8

4(a)(3)(B)(iii)(II); *Lernout & Hauspie*, 138 F. Supp. 2d at 43; *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 262-68 (3d Cir. 2001), *cert. denied*, 122 S. Ct. 1300 (2002) ("[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a "fair and adequate" job").

### III.  SUMMARY OF ALLEGATIONS

Biopure is a biotechnology company that develops, manufactures and markets oxygen therapeutics, a new class of pharmaceuticals that are intravenously administered to deliver oxygen to the body's tissues. ¶2.  The Company's main product is Hemopure, a human blood substitute derived from cow's blood, which acts like red blood cells to deliver oxygen to the body.  ¶2.  In July 2002, Biopure submitted a biologic license application ("BLA") to the U.S. Food and Drug Administration ("FDA") seeking regulatory approval to market Hemopure in the U.S. for use in orthopedic surgery.  ¶2.  In March 2003, Biopure filed a separate application with the FDA for permission to begin new clinical trial testing of Hemopure with hospitalized trauma patients.  ¶2.

Throughout the Class Period, defendants knew by virtue of their ongoing communications with the FDA that the FDA had strong reservations about Hemopure's safety, particularly as to its use with trauma patients.  ¶4.  In fact, the FDA found that adverse data from the Company's Phase III orthopedic surgery trials (which were submitted in connection with both the orthopedic and trauma applications) raised serious safety concerns, including the death of patients.  ¶4.  The FDA was so concerned that it placed Biopure's trauma study application on "clinical hold" and requested a host of

9

additional information from Biopure that will severely delay any possible approval of Hemopure for use in orthopedic surgery until, at best, that latter-half of 2004. ¶4. Notwithstanding these material concerns raised by the FDA, defendants continually represented throughout the Class Period that they were optimistic of achieving FDA approval to market Hemopure to orthopedic patients. ¶5. Moreover, while the Company repeatedly expressed its desire to expand Hemopure's use to trauma situations, the Company never disclosed to the public that it had actually filed its trauma study application with the FDA and that the FDA had repeated blocked the trauma trials, citing safety concerns. ¶5.

On Wednesday, December 24, 2003, after the close of the markets on Christmas Eve, defendants announced a potential SEC inquiry for securities fraud and, for the first time, disclosed material problems with its Hemopure product and the FDA approval process. ¶6. First, the Company announced that on Monday, December 22, 2003, the Company received a "Wells Notice" from the U.S. Securities and Exchange Commission ("SEC")[2] for failing to adequately disclose material information about Biopure's communications with the FDA concerning the Hemopure applications. ¶6. Second, the Company revealed – for the first time – that in March 2003, it sought FDA permission to begin new clinical trial testing of Hemopure in hospitalized trauma patients and that the FDA had repeatedly denied the request. ¶6.

In response to this announcement, the market price of Biopure common stock plummeted 14 percent from a closing price of $2.82 per share on December 24, 2003 to a closing price of $2.43 per share on December 26, 2003. ¶7. Biopure's stock continued

10

its decline on Monday, December 29, 2003, closing at $2.43 per share, far from the Class Period high of $8.25 per share. ¶7.

Before disclosing the negative FDA communications and before the collapse of Biopure's stock price, the defendants substantially profited from their inflation of Biopure's stock price. ¶8. In July 2003, Biopure sold over $17 million in common stock in a private placement offering. ¶8. Moreover, defendant Rausch reaped almost $1.6 million in illicit insider trading proceeds during the Class Period. ¶8.

## IV.  ARGUMENT

### A.    The Related Actions Should Be Consolidated

There are fifteen related securities class actions pending in this District alleging claims against Biopure and its top officers for violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. These related actions are as follows:

> *Greene v. Biopure Corp.*, 03-CV-12628
> *Esposito v. Biopure Corp.*, 04-CV-10013
> *King v. Biopure Corp.*, 04-CV-10038
> *Criden v. Biopure Corp.*, 04-CV-10046
> *Shurkin v. Biopure Corp.*, 04-CV-10055
> *Nizzo v. Biopure Corp.*, 04-CV-10065
> *Brooks v. Biopure Corp.*, 04-CV-10077
> *Perlegis v. Biopure Corp.*, 04-CV-10078
> *Weber v. Biopure Corp.*, 04-CV-10090
> *Haim v. Biopure Corp.*, 04-CV-10144
> *Model Partners Ltd. v. Biopure Corp.*, 04-CV-10155
> *Patedaude v. Biopure Corp.*, 04-CV-10179
> *Pinckney v. Biopure Corp.*, 04-CV-10189
> *Johnson v. Biopure Corp.*, 04-CV-10190
> *Kruszka v. Biopure Corp.*, 04-CV-10202

---

[2]   The SEC sends a Wells notice to a company or an individual after its staff has completed an investigation and determined that sufficient wrongdoing has occurred to warrant civil charges to be filed. ¶6.

Each of the above-listed actions involves class action claims on behalf of purchasers of Biopure and asserts essentially similar and overlapping class claims for relief. Consolidation is appropriate where, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a). The test is met here and the actions should be consolidated.

### B. The Proposed Lead Plaintiffs' Motion Is Properly Made Pursuant To The PSLRA

Pursuant to Section 78u-4(a)(3)(A)(i) of the PSLRA, on December 30, 2003, the law firm of Cauley Geller Bowman & Rudman, LLP caused to be published a notice over a national business-oriented wire service, *PR Newswire*, advising members of the proposed class that a securities class action was filed and that investors had the right to move for appointment as lead plaintiff no later than March 1, 2004. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i); Block Decl. ¶2. Having timely filed the instant motion, the Proposed Lead Plaintiffs satisfy the requirements set forth in Section 78u-4(a)(3)(B)(iii)(I)(aa) of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

*PR Newswire* is a national business-oriented news wire service that distributed the Notices to more than 2,000 different outlets, including *Dow Jones News Retrieval*, *Associated Press,* and *Reuters*. Block Decl. ¶3. The Notices were reprinted, verbatim, by *Dow Jones, Yahoo, Lexis/Nexis, Westlaw and Bloomberg.* Block Decl. ¶2.

In *Greebel v. FTP Software, Inc.,* 939 F. Supp. 57 (D. Mass. 1996), the court found that the notice requirements of Section 78u-4(a)(3)(A)(i) of the PSLRA are satisfied when the plaintiff publishes notice through a national business wire service and when the notice is republished on a medium such as *Bloomberg Business News*. Id. at 62-64*; see also Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 545-46 (N.D. Tex. 1997)

12

(finding publication of notice over *Business Wire* adequate). Thus, the notice requirements of Section 78u-4(a)(3)(A)(i) of the PSLRA have been satisfied in this case.

    **C.**    **The Proposed Lead Plaintiffs Have Complied With The Requirements Of The PSLRA And Have The <u>Largest Financial Interest In The Relief Sought By The Class</u>**

The Proposed Lead Plaintiffs have each signed a certification forms stating that they have: (1) reviewed the complaint; (2) authorized the filing of a complaint on its behalf; and (3) is willing to serve as a representative on behalf of the Class. These certifications contains the requisite statements and satisfies subsection (aa) of Section 78u-4(a)(3)(B)(iii)(I) of the PSLRA. A copy of these certifications are attached as Exhibit B to the Block Declaration.

Under the Exchange Act, losses are calculated as the difference between the purchase or sale price paid and the mean trading price over a 90-day period beginning after the close of the class period. *See* 15 U.S.C. § 78u-4(e)(1) (requiring damages to be based upon the mean trading price for the 90 days after the correction was revealed, which period has yet to expire). The "mean" or average closing price for Biopure common stock during the period December 25, 2003 through March 1, 2004 was $2.0295 per share. *See* Block Decl., Ex. C.

During the Class Period, Mr. Eliopoulos suffered losses of $31,008 as a result of purchase and sale of 9,675 shares of Biopure common stock. During the Class Period Mr. Self suffered losses of $15,498 as a result of purchasing 10,000 shares of Biopure common stock. During the Class Period, Mr. Mentz suffered losses of $13,707 as a result of purchasing 7,000 shares of Biopure common stock. Thus, the Proposed Lead Plaintiffs are believed to possess the largest financial interest in the relief sought by the Class in

these actions. The Proposed Lead Plaintiffs satisfy Section 78u-4(a)(3)(B)(iii)(I)(bb) of the PSLRA and are presumptively the most adequate lead plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### D. The Proposed Lead Plaintiffs Satisfy The Requirements Of Fed. R. Civ. P. 23

Section 78u-4(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B) (iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two, typicality and adequacy, directly address the personal characteristics of the class representative. *See Lernout & Hauspie*, 138 F. Supp. 2d at 46 (recognizing that plaintiffs seeking appointment as lead plaintiff need only make preliminary showing that they satisfy Rule 23 typicality and adequacy requirements). Consequently, in deciding a lead plaintiff motion, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23, and defer its examination of the remaining requirements until the lead plaintiffs move for class certification. *See Gluck*, 976 F. Supp. at 546. A court's determinations with respect to typicality and adequacy are without prejudice to defendants' right to contest these issues

14

later in the action. As set forth below, Proposed Lead Plaintiffs satisfy the typicality and adequacy requirements of Rule 23(a), thereby justifying their appointment as Lead Plaintiff.

### 1. The Proposed Lead Plaintiffs' Claims Are Typical Of Those Of The Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied when the prospective lead plaintiff's claims arise out of the same course of conduct and are based on the same legal theory of the other members of the class. *See Lernout & Hauspie*, 138 F. Supp. 2d at 46 (typicality satisfied when a "named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class") (quoting *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)).

> In order to meet the typicality requirement of Rule 23(a)(3):
>
> plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of absent members. . . .  The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs.

*Randle v. SpecTran,* 129 F.R.D. 386, 391 (D. Mass. 1988) (citing *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988)).

The Proposed Lead Plaintiffs claims are typical of, if not identical to, the claims of the other members of the Class. As detailed above, the complaint alleges that the defendants violated Sections 10(b) and 20(a) of the Exchange Act and related SEC regulations, by publicly disseminating false and misleading statements during the Class

Period. In this action, the questions of law and fact common to the members of the Class and which affect individual Class members include:

- whether Biopure issued false and misleading statements during the Class Period relating to its prospects for FDA approval of the marketing of Hemopure;

- whether Biopure acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

- whether the market price of Biopure was artificially inflated during the Class Period because of defendants' conduct discussed herein; and

- whether the members of the Class sustained damages and, if so, what is the proper measure of damages.

These questions apply equally to the Proposed Lead Plaintiffs as to all members of the purported Class. Similar to all of the other members of the Class, the Proposed Lead Plaintiffs relied upon the integrity of the market in purchasing Biopure common stock during the Class Period. As a result, the Proposed Lead Plaintiffs suffered damages. The Proposed Lead Plaintiffs claims are based on the same course of conduct and legal theories of the other members of the class. Thus, the typicality requirement is satisfied in this case.

### 2. The Proposed Lead Plaintiffs Will Fairly And Adequately Represent The Interests Of The Class

Under Rule 23(a)(4) courts have consistently applied a two-prong test to assess the adequacy of representation: (1) whether the named plaintiffs have interests antagonistic to those of the class; and (2) whether the plaintiffs' attorneys are qualified to

conduct the litigation. *See Lernout & Hauspie*, 138 F. Supp. 2d at 46 ("plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experiences and vigorously able to conduct the litigation").

The Proposed Lead Plaintiffs satisfy this test. First, there is no conflict between Messrs. Eliopoulos, Self and Mentz and other Class members - all investors are aligned in the common interest of recovering the maximum possible damages from the defendants. Indeed, the large loss suffered by the Proposed Lead Plaintiffs creates an incentive to maximize the recovery in this case. Second, the Proposed Lead Plaintiffs have selected qualified law firms, Berman DeValerio and Cohen, Milstein as Lead Counsel. These firms specialize in the prosecution of federal securities fraud class action lawsuits and are thoroughly committed to vigorously prosecuting this action. These firms have represented institutional investor clients and other class representatives in other major class actions.

Accordingly, there can be no doubt that the Proposed Lead Plaintiffs have amply demonstrated their ability to oversee this action and to act in the best interest of the Class to obtain the maximum recovery. Based on these facts, the Proposed Lead Plaintiffs satisfy the requirements of Section 78u-4(a)(3)(B)(iii)(I) of the PSLRA and should be appointed Lead Plaintiffs.

F.  **Berman DeValerio And Cohen, Milstein Should Be Appointed Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to approval by the Court. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Proposed Lead Plaintiffs have selected and retained the law firms of Berman DeValerio and Cohen,

Milstein as Lead Counsel in this action. Each firm is highly skilled and experienced practitioners who specialize in federal securities class action litigation and are thoroughly committed to the vigorous prosecution of this action. *See Lernout & Hauspie*, 138 F. Supp. 2d at 47 (approving Berman DeValerio as lead counsel in complete securities litigation). A copy of the firm resumes for Berman DeValerio and Cohen, Milstein are annexed to the Block Declaration as Exhibits E and F.

## V.  CONCLUSION

For all of the foregoing reasons, George Eliopoulos, Dale Self and Mark Mentz respectfully requests that this Court: (i) consolidate all related actions; (ii) appoint them as Lead Plaintiffs in the consolidated securities class action; and (iii) approve their selection and retention of Berman DeValerio and Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as Lead Counsel.

Dated: March 1, 2004                                                Respectfully submitted,

**BERMAN DEVALERIO PEASE
  TABACCO BURT & PUCILLO**

/s/ Jeffrey C. Block
Jeffrey C. Block
Patrick T. Egan
One Liberty Square
Boston, Massachusetts 02109
(617) 542-8300

**COHEN, MILSTEIN, HAUSFELD &
  TOLL, P.L.L.C.**
Steven J. Toll
Daniel S. Sommers
Julie Goldsmith
1100 New York Ave. NW.
West Tower, Suite 500
Washington, DC 20005
(202) 408-4600

**Attorneys for Plaintiffs George Eliopoulos, Dale Self and Mark Mentz**

**Proposed Lead Counsel**

Biopure/dp/LP_Memoradum

19